# SUPREME COURT.

## John W. Stebbins agt. The East Society of the Methodist Episcopal Church, Rochester.

The question for the court, in all cases upon *confession of judgment*, is, whether in view of the *particular facts of each case*, the statute, which is entirely new, (*Code*, §§ 382, 383,) has been substantially complied with? And it is the duty of the court to construe the act liberally in furtherance of justice, and not hypercritically.

It was *held*, that the statute, in the thirty-seven judgments confessed by these defendants at one time, had been substantially complied with, *except* so far as related to *the statement of facts out of which the indebtedness arose*, and as to such statement, (being the same in each,) it was held that it was altogether too vague and indefinite.

The statement was as follows:—" The following is a statement of facts upon which this confession of judgment is founded: Since the 10th day of December, 1845, the said A—— B—— (plaintiff) has lent and advanced to the said defendant the sum of two thousand, one hundred and thirty dollars, to pay off and discharge the debts of said defendant, and which has been used for the purpose of paying off said debts—no part of which has since been repaid to said A—— B——, and the *defendant is now justly indebted to said A—— B——* in that sum."

This does not state when the money was lent, or paid and advanced—whether in one sum or in many. It should have stated whether this money was all advanced at one time or at several times, and when and in what sums.

Besides, it is defective in respect to the application or use of the money. The statement, that "it was lent and advanced to pay off and discharge the debts

of said defendant," gives no such information in regard to the transaction out of which the debt originated, as the creditor, seeking to impeach the judgment, is entitled to.

The defendant being a religious corporation, and having, as such, no proper dealings, except to defray the ordinary expenses of the church and the payment of its minister, is bound to explain to its creditors, where it confesses judgments like these, how such debts arose, for what consideration, and who was the creditor or creditors who have received such large sums of money— (some $14,000 in all)—and whether they were real *bona fide* debts of, or donations to the church or congregation.

*Monroe General Term, March,* 1856.
*Present, Justices* T. R. STRONG, WELLES and SMITH.

MOTION to set aside judgment, and thirty-seven other judgments against same defendants, in favor of other plaintiffs.

SELAH MATHEWS, *for motion.*
HENRY R. SELDEN & W. S. COGSWELL, *opposed.*

By the court—E. DARWIN SMITH, Justice. Before the passage of the Code, judgments were confessed by bond and warrant of attorney: judgment was entered up for the penalty of the bond, and execution issued for the amount specified in the condition thereof, with costs; or for so much thereof as the plaintiff claimed to be due. There was no restraint upon the confessions of judgments for such sums as the parties pleased, and judgments thus entered up could only be set aside on motion, or by bill in chancery for fraud in fact. Judgment by confession, under the old system, had become so common and fruitful source of fraud, that the commissioners on the Code (*see their Report, p.* 237,) recommended the legislature to change the practice.

The provisions of the Code authorizing and regulating confessions of judgment out of court now in force, are entirely new; and as they were professedly designed to remedy the old evils, should be so construed as to further that end, while this *simple* mode of obtaining judgment should not be needlessly embarrassed. The guards which the Code (§§ 382, 383,) have thrown around the confessions of judgment in furtherance of this

object, are " a written statement signed by the defendant, and verified by his oath—stating the amount for which the judgment may be entered, and authorizing the entry of judgment therefor, and containing also a concise statement of the facts out of which it (the indebtedness) arose, and showing that the sum confessed therefor is justly due, or to become due." The question for the court in all cases under this act is, whether, in view of the particular facts of each case, this statute has been substantially complied with? And it is our duty to construe it liberally in furtherance of justice, and not hypercritically. (*Code*, §§ 159, 467.)

The provisions of the statute in these thirty-eight judgments, I think, have been substantially complied with, except so far as relates to the statement of facts out of which the indebtedness arose, for which they were respectively confessed.

The confession in favor of John Stroup is for $2,130. The statement in this case, which is a fair sample of all, (except the judgment in favor of John H. Stebbins,) is as follows. " The following is a statement of the facts upon which this confession of judgment is founded : Since the 10th day of December, 1845, the said John Stroup has lent and advanced to the said defendant the sum of two thousand, one hundred and thirty dollars, to pay off and discharge the debts of said defendant, and which has been used for the purpose of paying off said debts—no part of which has since been repaid to said John Stroup, and the defendant is now justly indebted to said Stroup in that sum." With slight verbal variations, the statement in the thirty-six other judgments is the same in substance with the above. Is this a concise statement of the facts out of which the indebtedness arose for which these judgments were confessed within the meaning and intent of the statute?

The court of appeals, in the case of *Chappell* agt. *Chappell*, (2 *Kernan*, 215,) has given a construction to this section of the Code. The judgment in that case was confessed upon two promissory notes of which the dates and amounts were given, and time of payment. The court held that this statement was insufficient, that the consideration of the notes should have

Stebbins agt. The East Society of the M. E. Church, Rochester.

been given. Judge GARDINER, who gave the leading opinion, says, " The statute looks not to evidence of the demand, *but to the facts in which it originated;* in other words, to the consideration which sustains the promise :" and he also refers to and adopts the reasoning of the court in *Lawless* agt. *Hackett,* (16 *John.* 149.)

The case of *Lawless* agt. *Hackett* arose under the act of 1818. (*Vide Sess. Laws of* 1818, *chap.* 280, § 8,) which required " a particular statement and specification of the nature and consideration of the debt or demand on which such judgment is confessed." In the case of *Lawless* agt. *Hackett,* part of the specification was in these words : " for money lent and advanced by the plaintiff to the defendant ; and also for money lent and advanced by the plaintiff to the defendant at various times—the money lent being to the amount of $400." This statement the supreme court held, in that case, was *not a sufficient* statement of " the nature and consideration of the debt or demand :" and Chancellor KENT, (*in* 5*th John. Ch. Rep.* 326,) speaking of this very specification says, " It is too general and loose to meet the mischief which the statute was intended to prevent."

In the case of *Chappell* agt. *Chappell,* Justice DEAN also says, " the intention of this requirement (speaking of § 383 of the Code) was to compel the person confessing a judgment to disclose, under oath—which oath was to become part of the public records—what was the real consideration of the judgment confessed, to show to all interested ' *the transaction out of which the debt originated.*' "

Applying the principles and tests of these views and·decisions to the statement of facts on which the judgment of John Stroup and the thirty-six others just like it are founded, these judgments cannot be sustained. In the language of Chancellor KENT, above cited, the statement " is too general and loose to meet the mischief which the statute was intended to prevent."

The statement is altogether too vague and indefinite. It does not state when the money was *lent,* or paid and advanced, —whether in one sum or in many. It states that " it has been

lent and advanced since December 10th, 1845." Certainly, the defendant could easily have been more specific; and, in a concise statement, it could and should have stated whether this money was all advanced at one time or at several times, and when, and in what sums. The statement is also defective in respect to the application or use of the money. It states that, "it was lent and advanced to pay off and discharge the debts of said defendant." This gives no such information in regard to the transaction out of which the debt originated, as the creditor seeking to impeach the judgment is entitled to: all he learns from this statement is that the money was lent and advanced to pay debts during a period of ten years. What the debts were for, and who was the creditor, he was entitled to know, and it is not stated.

Taking all these judgments together, all of which were confessed at the same time, and they amount to the sum of about $14,000. The creditor, seeking to collect his debt of this defendant, and seeking to impeach these judgments, has a right to know for the payment of what debts so much money was borrowed by this defendant. The defendant being a religious corporation, and having as such no proper dealings except to defray the ordinary expenses of the church, and the payment of its minister, is bound to explain to its creditors, where it confesses judgments like these, how such debts arose, for what consideration, and who was the creditor, or the creditors, who have received such large sums of money. The creditor has a right to look into the transaction out of which the claims upon which these judgments were confessed originated, and to see whether they were real *bona fide* debts of, or donations to, the church or congregation. For this purpose he is entitled to a more full disclosure than is here given of the nature and consideration of the debts, and the character of "the transaction out of which such debts originated," else the concise statement of the facts required by the statute is little or no improvement upon the old mode of confession by bond and warrant of attorney.

The judgments in these cases cannot be sustained within the

principles, besides the cases above cited—decided in *Plummer* agt. *Plummer*, (7 *How. Pr. R.* 62,) *Schoolcraft* agt. *Thompson*, (*id*. 447,) *Bruce* agt. *Purdy*, (10 *id*. 497,) *Boyden* agt. *Johnson*, (11 *id*. 504,) and several other cases at special term: nor within the principles held in this district at general term in the case of *Schoolcraft* agt. *Thompson*, (9 *Howard*, 61.) Justice JOHN-SON, in his opinion in that case, says, " The *time and nature of the transaction*, and the consideration of the indebtedness, in concise and general *terms*, must be sufficient, unless a bill of particulars is required." These confessions clearly do not come up to this rule. The learned justice also says, " I agree with the justice at special term, that the general object and intent of the provisions were to protect third persons from fraudulent judgments, by furnishing them the means of detecting and defeating the fraudulent designs." Because these confessions do not furnish the creditor with these "*means*," I consider them defective as concise statements of the facts, required by the statute. I agree with the learned justice, that the statute does not require a statement as full as a bill of particulars. That, in many cases, would not be a concise statement. It would be unnecessary and burdensome in many cases to give it. A statement of the consideration of the debt, and of the nature of the transaction out of which it arose, can be embraced in most cases, in a very brief compass. If the judgment is confessed for goods sold, it is very easy to state, in a few words, the amount of the bill, when and of whom purchased, and the general character of the goods—as dry goods, or groceries, or hardware. So in respect to the sale of any other property; and if the consideration be money lent, or paid and advanced, to state time and person, and amount, so that the real character of the transaction may be seen upon the face of the judgment. It can only be difficult to do this when there is some reason for concealment or mistification. The statute is a wise one, and is very easily executed.

The case of *Chappell* agt. *Chappell*, *supra*, asserts and affirms the right of a judgment-creditor of the debtor who has made or given a confession of judgment under § 383 of the Code, to

apply to the court, by motion, to set aside such judgment—as between the parties the judgment is doubtless valid in such cases. It is only a judgment-creditor who can call it in question; and such creditor has a right to have the judgment set aside as fraudulent or void, as against him, if the statute authorizing the confession has not been complied with.

Upon this ground, all these judgments should be set aside, except the one in favor of John W. Stebbins. In this case the confession states that, in December, 1853, said Stebbins was retained to commence a suit against John E. Cole, and prosecuted same until the settlement thereof, and also acted as counsel, aided and assisted in the defence of a suit brought against the defendants by one Edward Jones, and that the sum for which said judgment is confessed ($160) is his claim against the defendants for such services, all which are justly due. This states the nature of the claim, and the consideration, with sufficient distinctness to answer the requirements of the statute. The judgment-roll in this case was not signed by the clerk; but this we think a mere irregularity—cured by the one year's limitation of the statute in respect to formal errors and defects. (*Vol.* 2*d, Rev. Stat.,* 1*st ed., p.* 359, § 2.)

The setting aside of the judgments in the other thirty-seven cases is doubtless a case of hardship in respect to these plaintiffs, and resulting as it does from the construction which we are constrained to make of a statute introducing provisions of a law entirely new, we think the motions should be granted, without costs to either party.

Motion granted as to all the judgments, without costs, except the one in respect to the judgment in favor of John W. Stebbins, which is denied.

WELLES, Justice, *dissenting.*